## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE 285 LYNN SHORE DRIVE CONDOMINIUM TRUST, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 1:24-cv-10049-JEK |
| SENECA INSURANCE COMPANY and ENGLE MARTIN & ASSOCIATES, | ) ) ) | |
| Defendants. | ) ) ) | |

## <u>MEMORANDUM AND ORDER ON SENECA INSURANCE COMPANY'S MOTION TO DISMISS COUNT I OF THE COMPLAINT OR ALTERNATIVELY TO COMPEL APPRAISAL</u>

**KOBICK, J.**

This insurance dispute arises from damage caused by the bursting of frozen water pipes at a residential property in Lynn, Massachusetts. The 285 Lynn Shore Drive Condominium Trust sued Seneca Insurance Company and its adjuster, Engle Martin & Associates, alleging that Seneca breached the operative insurance policy and that both defendants engaged in unfair trade practices under M.G.L. c. 93A and 176D by improperly undervaluing, and inadequately compensating for, the property's extensive water damage. Pending before the Court is Seneca's partial motion to dismiss or alternatively to compel appraisal pursuant to the parties' insurance policy and M.G.L. c. 175, § 99. Seneca contends that the Condominium Trust failed to comply with a condition precedent to this lawsuit—namely, that it participate with Seneca in the "referral" or "appraisal" process outlined in the insurance policy and required by Section 99, whereby an objective panel of referees resolves the parties' dispute over the amount of the loss. Concluding that appraisal is a

condition precedent to litigation required both by Section 99 and the governing insurance policy, the Court will grant Seneca's motion to compel appraisal.

## BACKGROUND

Seneca's motion, styled as a partial motion to dismiss or alternatively to compel appraisal, was filed two weeks after Seneca filed its answer. ECF 4, 7-8. The Court thus alerted the parties that it would treat Seneca's motion as a partial motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, in the alternative, a motion to compel appraisal. ECF 9 (citing *Villeneuve v. Avon Prod., Inc.*, 919 F.3d 40, 49 (1st Cir. 2019) (when a defendant files a Rule 12(b) motion after filing its answer to the plaintiff's complaint, the court should "trea[t] the motion as a Rule 12(c) motion"). This "does not affect [the Court's] analysis inasmuch as the two motions are ordinarily accorded much the same treatment." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006). In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court accepts as true all well pleaded facts in the complaint. *See Doe v. Brown Univ.*, 896 F.3d 127, 130 (1st Cir. 2018). Where appropriate, the Court also "'supplement[s] those facts by reference to documents incorporated in the pleadings.'" *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 56 (1st Cir. 2018) (quoting *Jardín de las Catalinas Ltd. P'ship v. Joyner*, 766 F.3d 127, 130 (1st Cir. 2014)).

The property located at 285 Lynn Shore Drive in Lynn, Massachusetts, was originally built in 1893 as a hotel before it was converted into 82 residential units. ECF 1-1, ¶¶ 4-5. The Condominium Trust, which represents the owners of those units, purchased a Master Common and Property Insurance Policy for the building from a New York insurer, Seneca, effective October 10, 2022 through October 10, 2023. *Id.* ¶¶ 2, 6, 8-9. The policy insured the building against casualty losses, including, subject to certain exclusions, physical loss or damage to the property. *Id.* ¶ 8;

ECF 8-1. Due to a cold snap in early February 2023, the property's pipes froze and then burst, causing water damage in 22 units and certain common areas. ECF 1-1, ¶¶ 10-13.

In response, the Condominium Trust claimed the loss with Seneca and hired JRM Restoration to remediate the damage. *Id.* ¶¶ 14, 16. The Condominium Trust also engaged a public adjuster, Robert Gillete, while Seneca retained its own adjuster, Engle Martin. *Id.* ¶¶ 3, 16, 19. Gillete estimated that the cost of rebuilding would be $3.4 million, whereas Engle Martin proposed an adjustment of $731,273.30 to rebuild the 22 affected units and associated common areas. *Id.* ¶¶ 24, 32.

The parties' disagreement about the amount of the loss and the scope of Seneca's liability is reflected in their correspondence in the summer and fall of 2023, attached as exhibits to the complaint. ECF 1-1, Exs. B-D. In July 2023, Seneca sent a letter to the Condominium Trust "find[ing] coverage for the repair of the freeze damage piping and resultant water damage" and estimating that "the undisputed replacement cost" of those repairs is $851,990.35. ECF 1-1, Ex. B, at 2. The letter denied coverage, however, for the mold remediation and the associated replacement costs because "the mold observed is unrelated and preexists this [February 2023] loss." *Id.* at 1.

The Condominium Trust responded in October 2023 with a "Demand for Unfair and Deceptive Insurance Practices, M.G.L. c. 176D and G.L. c. 93A" letter claiming that Seneca and Engle Martin engaged in unfair and deceptive insurance claim settlement practices by, among other actions, "lowballing and stalling the rebuild" and unreasonably rejecting specific line items, including the replacement of doorknobs, hinges, millwork, door jambs, and baseboards. ECF 1-1, Ex. C, at 2-4. The letter also stated that the cost to rebuild is $3.3 million and that Seneca's

adjustment of $700,000 "does not even pass the smell test it is so low" and "ignores certain necessary work in various of the damaged units and associated common areas." *Id.* at 2, 4.

In November 2023, Seneca rejected those claims, replying that it "has . . . complied fully with its statutory and contractual obligations" by "conduct[ing] a reasonable investigation with reputable consultants and adjusters" and by "undertak[ing] to find a pathway for resolution and agreement concerning the insured's claimed losses." ECF 1-1, Ex. D, at 1. Seneca's reply further explained that "the insurance policy provides a mechanism to resolve disputes concerning the amount of loss," so if the Condominium Trust "disagrees with Seneca's adjustment of the loss, it is free to demand Appraisal, also known as Reference." *Id.* at 5. In an appraisal or reference, a neutral panel of three referees resolves the parties' dispute over the amount of the loss. *Id.*

In December 2023, the Condominium Trust filed this action in Essex County Superior Court. The complaint asserts two claims: breach of contract against Seneca (Count I), ECF 1-1, ¶¶ 62-70, and violation of M.G.L. c. 93A and 176D against Seneca and Engle Martin (Count II), *id.* ¶¶ 71-80. The defendants timely removed the case to this Court, invoking diversity jurisdiction. ECF 1, ¶¶ 2-3. After the defendants filed their answer, Seneca moved to dismiss Count I pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively to compel appraisal. ECF 7. The Court explained that it would treat Seneca's motion as a motion for judgment on the pleadings under Rule 12(c). ECF 9.

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) "is treated much like a Rule 12(b)(6) motion to dismiss." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (citing *Curran v. Cousins*, 509 F.3d 36, 43-44 (1st

Cir. 2007)). Accordingly, "'the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom.'" *Id.* (quoting *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006)). "[T]o survive a 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" *Id.* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The Court must examine whether the complaint "pleads factual content that allows [it] to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

Seneca and the Condominium Trust agree that Massachusetts law governs this dispute and rely on Massachusetts law in supporting and opposing the motion. Guided by "the parties' reasonable agreement," the Court will apply Massachusetts law. *Martins v. Vermont Mut. Ins. Co.*, 92 F.4th 325, 328 (1st Cir. 2024); *see NextSun Energy Littleton, LLC v. Acadia Ins. Co.*, 494 F. Supp. 3d 1, 13 n.7 (D. Mass. 2020) (applying Massachusetts law where "[t]he parties both acknowledge that Massachusetts law applies" and "[t]he policy in dispute was issued in Massachusetts to a Massachusetts company, and the underlying suit was filed in Massachusetts courts asserting violations of Massachusetts state laws").

"Under Massachusetts law, '[t]he proper interpretation of an insurance policy is a matter of law to be decided by a court, not a jury.'" *U.S. Liab. Ins. Co. v. Benchmark Constr. Servs., Inc.*, 797 F.3d 116, 119 (1st Cir. 2015) (quoting *Boazova v. Safety Ins. Co.*, 462 Mass. 346, 350 (2012)). "[T]he court 'must construe the words of the policy in their usual and ordinary sense.'" *Id.* (quoting *Bos. Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 355 (2009)). If the policy language is

ambiguous, "'doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured.'" *Boazova*, 462 Mass. at 350-51 (quoting *August A. Busch & Co. of Mass. v. Liberty Mut. Ins. Co.*, 339 Mass. 239, 243 (1959)). "An ambiguity arises when there is more than one rational interpretation of the relevant policy language" but "'is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other.'" *Bos. Gas Co.*, 454 Mass. at 356 n.32 (quoting *Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462, 466 (1995)).

Seneca contends that it is entitled to judgment on the breach of contract claim because the Condominium Trust failed to plead that its claimed loss is payable under the insurance policy or that it has complied with a condition precedent pursuant to that policy—namely, the so-called "reference" or "appraisal" process required by the insurance policy and M.G.L. c. 175, § 99. In the alternative, Seneca moves to compel the Condominium Trust to participate in reference or appraisal to assess the amount of loss incurred in February 2023.

Enacted in the wake of the great Boston fire in 1872, M.G.L. c. 175, § 99 prescribes mandatory conditions for standard fire insurance policies. *Aquino v. United Prop. & Cas. Co.*, 483 Mass. 820, 826 (2020). Among other things, it adopts a "summary method of establishing the amount of [a] loss" suffered by an insured entity, *Hanley v. Aetna Ins. Co.*, 215 Mass. 425, 430 (1913), in order "to expedite the equitable settlement of claims," *Ems.' Liab. Assur. Corp. v. Traynor*, 354 Mass. 763, 763 (1968). The Twelfth Clause of the statute provides, in pertinent part:

> In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men . . . and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage.

M.G.L. c. 175, § 99, cl. 12. Importantly, it also provides that "such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such

loss." *Id.* Section 99 is thus "explicit that '[i]n case of . . . a failure of the parties to agree as to the amount of loss,' reference, unless waived, shall be a 'condition precedent' to any right of action to recover for such loss." *McCord v. Horace Mann Ins. Co.*, 390 F.3d 138, 142 (1st Cir. 2004); *see Molea v. Aetna Ins. Co. of Hartford*, 326 Mass. 542, 547 (1950) ("The matter of reference to three disinterested persons, unless waived by the parties, [is] a condition precedent to recovery upon the policies, if the parties fai[l] to agree upon the amount of loss.").

The parties' insurance policy includes language identical to the language used in the Twelfth Clause of Section 99, including the phrase that "unless waived by the parties, [reference] shall be a condition precedent to any right of action in law or equity to recover for . . . loss." ECF 8-1, at 48.[1] The policy further specifies that the "Appraisal . . . Provisions of [M.G.L. c. 175, § 99] shall apply." *Id.* at 45. And it explains that "Massachusetts law requires that the . . . Appraisal . . . Provisions of [M.G.L. c. 175, § 99] supersede any similar provisions contained in [the] policy." *Id.* Where, as here, the parties disagree about the amount of the loss incurred by the Condominium Trust in the cold snap of February 2023, the plain language of Section 99 and of their insurance policy required the Condominium Trust to participate in a reference process before filing this action.

Disputing that conclusion, the Condominium Trust contends that reference is not a prerequisite to this lawsuit because, in addition to a dispute about the amount of loss, its breach of contract claim involves a dispute about the scope of the policy's coverage and the extent to which Seneca is liable under the policy. According to the Condominium Trust, Seneca "has denied liability and coverage for a large portion of the covered loss" by, among other things, "removing

---

[1] In examining a Rule 12(c) motion, the Court can consider the parties' insurance policy because it is "'central to [the Condominium Trust's] claim[s]'" and "'sufficiently referred to in the complaint.'" *Curran*, 509 F.3d at 44 (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

units from the claim" and "unreasonably contesting salvageable materials." ECF 13, at 1; *see id.* at 6; ECF 1, ¶¶ 24, 39-40, 44, 46, 63-66. While the Condominium Trust is correct that a reference proceeding does not determine questions of liability or coverage, "[q]uestions of ultimate liability are determinable following action on the reference." *Traynor*, 354 Mass. at 763; *see F. & M. Skirt Co. v. Rhode Island Ins. Co.*, 316 Mass. 314, 316 (1944) ("Obviously the referees would not have the right under such a reference . . . to decide questions pertaining to liability."). Thus, "[e]ven though an insurer denies liability, the reference condition must be observed absent agreement as to the loss amount." *McCord*, 390 F.3d at 143. And here, as the Condominium Trust concedes, the parties disagree about the total amount of loss at issue in the breach of contract claim. *See* ECF 13, at 2 ("the Parties disagree on the ultimate amount" of damages). Because the Condominium Trust admits that valuation "is part of the claim" and that "the ultimate amount is in dispute," *id.* at 1, the insurance policy and Section 99 require appraisal as a precondition to this lawsuit.

The Condominium Trust's concern that the referees' decisions as to liability and coverage will have preclusive effect is unfounded. True, "the referees must reach their own conclusions as to what they think that loss or damage is," and those "conclusions must necessarily be affected by what they think the coverage is." *Fox v. Emps.' Fire Ins. Co.*, 330 Mass. 283, 288 (1953). But the Supreme Judicial Court has emphasized that the referees' "views so far as ultimate liability goes are wholly tentative and in no sense a decision on that underlying question." *Id.* Thus, while the referees must "find the amount of loss in light of their own interpretation of the terms of the policy," the ultimate "question of construction . . . remain[s] open for reexamination" by a court in an action on the policy. *Augenstein v. Ins. Co. of N. Am.*, 372 Mass. 30, 37 (1977). The parties will therefore be "free to litigate questions of liability after resolving any dispute about the amount of loss in a reference proceeding." *McCord*, 390 F.3d at 143. As this Court summarized: "If the

referees reach questions of ultimate liability, those issues can be relitigated; but that eventuality does not excuse the contractual requirement that there be a reference before there be a law suit." *F.C.I. Realty Tr. v. Aetna Cas. & Sur. Co.*, 906 F. Supp. 30, 33 (D. Mass. 1995).

The Condominium Trust also contends that Seneca waived appraisal as a condition precedent to this lawsuit. "Waiver . . . may be inferred from the conduct of the insurer or its agents, but the burden of proving such waiver or excuse falls on the party seeking to rely upon it." *Moran v. Phoenix Ins. Co.*, 7 Mass. App. Ct. 822, 824 (1979). The Massachusetts Appeals Court has, for example, concluded that an insurer's "denial of liability and its failure to refer to reference in its letter could . . . be found to be a waiver of the reference as a condition precedent to litigation." *Lancaster v. Gen. Acc. Ins. Co. of Am.*, 32 Mass. App. Ct. 925, 926, *aff'd*, 413 Mass. 1007 (1992). "In other cases finding waiver, there was an absence of evidence that the insurer disputed the amount of loss." *McCord*, 390 F.3d at 144 (citing *Goodman v. Quaker City Fire & Marine Ins. Co.*, 241 F.2d 432, 436 (1st Cir. 1957) and *Moran*, 7 Mass. App. Ct. at 824).

The Condominium Trust bases its waiver argument on Seneca's November 13, 2023 letter responding to the chapter 93A demand. That letter provides, in relevant part, as follows:

> [I]n as much as there are outstanding questions bearing on the applicability or availability of coverage for this loss, Reference does not and will resolve or concern issues of coverage. Seneca expressly reserves all rights on matters affecting its liability and coverage under the insurance policy and at law and does not and will not consent to have any matter of or concerning coverage decided at Reference. *See* G.L. c. 175, § 101E and *Audubon Hill South Condominium Ass'n v. Community Ass'n Underwriters of America, Inc.*, 82 Mass. App. Ct. 461 (2012).

ECF 1-1, Ex. D, at 5. This language merely reserves the issue of coverage and liability for resolution by a court, rather than the referees. Indeed, it references another statute, M.G.L. c. 175, § 101E, that "preserves to an insurer 'any legal defense to the claim in respect to which the reference proceedings are held' unless the parties agree in writing to empower the referees as

arbitrators under the terms of the Uniform Arbitration Act, G.L. c. 251." *Audubon Hill S. Condo. Ass'n v. Cmty. Ass'n Underwriters of Am., Inc.*, 82 Mass. App. Ct. 461, 464 n.8 (2012). Seneca's reservation of defenses does not constitute waiver of the condition precedent, particularly where it disputed the amount of loss in the same letter. ECF 1-1, Ex. D, at 3-4. Seneca also stated that the Condominium Trust "is free to demand Appraisal, also known as Reference in Massachusetts," and that "[n]othing contained herein . . . shall constitute a waiver . . . of any of its rights with respect to coverage." *Id.* at 5. Seneca similarly raised the appraisal issue as its ninth affirmative defense in its answer, stating that the Condominium Trust "failed to comply with the conditions precedent to bringing this action as required by the terms and provisions of the policy, as well as Massachusetts law, including . . . G.L. c. 175, § 99," because it "never demanded Reference before filing suit over a dispute over the amount of loss." ECF 4, at 12-13.

Even when considered in the light most favorable to the Condominium Trust, Seneca has not waived the reference provision. *See McCord*, 390 F.3d at 144 (finding no waiver where the insurer "disputed the amount of the loss and repeatedly called attention . . . to the existence of the reference condition," including in its chapter 93A response and raising it as an affirmative defense; *Kiley v. Metro. Prop. & Cas. Ins. Co.*, 159 F. Supp. 3d 135, 143 (D. Mass. 2016) (finding no waiver because the insurer rejected the insured's stated loss amount and invoked Section 99 "in both its response to [the insured's] Chapter 93A letter and its answer to the Amended Complaint"); *F.C.I. Realty Tr.*, 906 F. Supp. at 33 ("There was no waiver" because the insurer "raised the reference issue as an affirmative defense in its answer to [the insured's] complaint and ha[d] repeatedly declined to waive its rights under the policy."). Accordingly, the Condominium Trust must, pursuant to Section 99 and its contractual obligations under the insurance policy, comply with the reference provision. Because reference is a condition precedent to litigation, the Court

will grant Seneca's motion to compel appraisal and stay this action pending completion of the reference proceedings. *See Kiley*, 159 F. Supp. 3d at 144 (staying action pending appraisal); *Santos v. Preferred Mut. Ins. Co.*, 939 F. Supp. 2d 67, 68 (D. Mass. 2013) (same).

## CONCLUSION AND ORDER

For the foregoing reasons, Seneca's motion to compel appraisal is GRANTED and its motion for judgment on the pleadings is DENIED. This action shall be stayed pending completion of the reference proceeding. The parties shall file a joint status report on or before October 16, 2024 regarding the status of the appraisal.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: July 18, 2024                    UNITED STATES DISTRICT JUDGE